# Third District Court of Appeal

## State of Florida

Opinion filed May 19, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-801
Lower Tribunal No. 15-565-K

_____

**Summerland Key Cove Park, LLC, et al.,**
Appellants,

vs.

**John C. Murphy, et al.,**
Appellees.

An Appeal from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Annesser Armenteros, PLLC, and Miguel Armenteros and John W. Annesser, for appellants.

Robert Cintron, Jr., for appellees.

Before SCALES, MILLER and LOBREE, JJ.

SCALES, J.

Appellants, defendants below, Summerland Key Cove Park, LLC (the "New LLC"), Walter Cain, Charles Eidschun and Orval Gaster[1] seek review of an April 1, 2019 final judgment ("Final Judgment") entered after a bench trial on the claims of appellees, plaintiffs below, John Murphy ("Murphy"), individually and on behalf of Summerland Key Cove AMD Homeowners Association, Inc. ("Old HOA") and Summerland Key Cove Homeowners' Association, Inc. ("New HOA"). The Final Judgment determined that: (i) the plat language granting Murphy a use easement to a park in a residential subdivision prevented the New LLC from placing any restrictions, reasonable or otherwise, on the easement; and (ii) the Individual Directors and the New LLC usurped a corporate opportunity of the Old HOA by purchasing the park. We reverse that portion of the Final Judgment concluding that the Individual Directors and the New LLC usurped a corporate opportunity of the Old HOA because the record does not support the finding that the Old HOA had the financial ability to buy the park. We reverse that portion of the Final Judgment determining that the plat language granting the easement precluded the imposition of any restrictions on the easement, and remand for a determination as to whether the imposed restrictions are reasonable.

---

[1] We refer to appellants Cain, Eidschun and Gaster, collectively, as the "Individual Directors."

## I.   Relevant Facts and Procedural Background

*A. The Subdivision, the Park, the Entities Created by the Individual Directors, and the Park Restrictions*

In 1957, the Monroe County Commission approved a plat for the Summerland Key Cove subdivision ("the plat"). The subdivision consisted of approximately one hundred and thirty residential lots, along with a park that included a small lake, canals and footpaths ("the park"). The plat contains language granting, among other things, the owners of the residential lots a use easement in the park. That easement language reads, in its entirety, as follows: "The park, lake, canals and footpaths are reserved for the exclusive use of the property owners in this subdivision." Over the years, the residential lots were sold to various buyers, including Murphy and each of the Individual Directors. Ownership of the park, however, remained with the subdivision developer.

In 2007, the Individual Directors, pursuant to chapter 617 of the Florida Statutes, incorporated the Old HOA as a not-for-profit voluntary homeowners' association. The Individual Directors attempted to convert the Old HOA into a mandatory homeowners' association (governed by chapter 720 of the Florida Statutes); however, the subdivision's existing owners did not give sufficient consent. The Old HOA's bylaws provided that "[m]embers shall be automatically admitted to membership in the [Old HOA] after

3

completing an application for membership supplied by the Board of Directors and accompanying same with the appropriate annual dues." Despite this language in the Old HOA bylaws, the record reflects, and the parties do not dispute, that no membership application was developed, no membership list existed, and no dues were ever collected. In fact, the Old HOA did not maintain a bank account. At certain points in time, the Individual Directors attempted to raise funds for the Old HOA by soliciting their subdivision neighbors, but such fundraising attempts were not successful.

In 2014, the subdivision developer approached the Individual Directors (who served as the officers for the Old HOA) to see whether the Old HOA would purchase the park from the developer. The record reflects that, because the Old HOA had no funds, the Individual Directors tried (without success) to persuade the developer to convey the park to the Old HOA for free. Ultimately, the developer reduced the park purchase price to $15,000. Because the Old HOA had no funds to purchase the park, the Individual Directors created a new entity – the New LLC – to purchase and operate the park.

The record does not reflect any overt effort by the Individual Directors to notify Murphy (or the other property owners in the subdivision) of the developer's $15,000 offer to sell the park; similarly, the record does not

reflect any overt efforts by the Individual Directors to engage in a fundraising drive on behalf of the Old HOA to enable the Old HOA to purchase the park. Instead, the Individual Directors put up their own money to purchase the park in the New LLC's name. Shortly after the New LLC's purchase of the park from the developer, the Individual Directors administratively dissolved the Old HOA.

The New LLC then proceeded to clean up and manage the park. As the new owner of the park, the New LLC also enacted rules and restrictions governing subdivision property owners' use and access to the park. Specifically, the New LLC:

(a)    prohibited after-dark use of the park;

(b)    required a $50.00 monthly fee for vehicle/vessel access to the park;

(c)    erected a locked gate to control the park access and limited the park access to only this gated entrance;

(d)    erected a cable across the shore of the lake to prevent unauthorized boat launching; and

(e)    required a liability release for use of the park

(collectively, the "Restrictions").

B. The New HOA and the Instant Lawsuit

In response to the Restrictions imposed by the New LLC, subdivision resident Murphy proceeded, pursuant to chapter 617, to incorporate a new, not-for-profit voluntary homeowners' association, the New HOA. Eventually, the New HOA had thirty-seven members from the subdivision and raised $26,000, which was earmarked to purchase the park from the New LLC.

Upon the imposition of the Restrictions by the New LLC, Murphy, in June 2015, filed the instant lawsuit both on his own behalf, and derivatively on behalf of the dissolved Old HOA.[2] In the lawsuit, Murphy sought declaratory relief against the New LLC, alleging that the Restrictions unreasonably interfered with his easement rights, as granted in the plat. Also, Murphy, derivatively, on behalf of the Old HOA, sought injunctive and other equitable relief against the Individual Directors and the New LLC, asserting that the Individual Directors – by creating the New LLC to purchase the park – had usurped a corporate opportunity belonging to the Old HOA.

*C. The Challenged Final Judgment*

On January 25, 2019, the trial court conducted a bench trial on Murphy's claims and, shortly thereafter, rendered the challenged April 1,

---

[2] The New HOA was also a named plaintiff in the suit, but in the Final Judgment, the trial court determined that the New HOA lacked standing to bring suit against any of the defendants. The New HOA did not cross-appeal this ruling.

2019 Final Judgment. The trial court's detailed Final Judgment relates this case's rather complicated factual history and ultimately concludes that, "despite the good intentions of the [Individual Directors], and however well meaning their actions, the law does not permit what occurred here without the consent of all of the affected owners."

Specifically, the Final Judgment concludes that the plat's easement language precludes the imposition of any restrictions, whether reasonable or not, declaring that "[Murphy] may use the [park] at any time, access the [park] with his vehicles to launch and retrieve watercraft from the lake without preapproval or fee, and access the [park] from whichever entrance he desires." As to a claim of the usurpation of corporate opportunity, the trial court – after concluding that the Individual Directors and the New LLC did usurp a corporate opportunity of the Old HOA – fashions a remedy requiring that the New LLC hold the park in a constructive trust on behalf of the long-since dissolved Old HOA, and "[u]pon the [Old HOA's] reinstatement, the [New LLC] shall transfer [the park] to the [Old HOA] in exchange for the [park]'s . . . $15,000 purchase price."

The Individual Directors and the New LLC timely appealed this Final Judgment.

II. Analysis

The Individual Directors and the New LLC challenge both portions of the trial court's Final Judgment. They assert that the trial court erred both in its construction of the plat's easement language, and by finding that the Individual Defendants and the New LLC had usurped a corporate opportunity of the Old HOA. We address both arguments in turn.

*A. Did the Restrictions Unreasonably Interfere with Murphy's Easement Rights Conveyed in the Plat?[3]*

In its Final Judgment, the trial court determined, as a matter of law, that, because the plat grants the subdivision property owners "exclusive use" of the park, the New LLC is prohibited from placing any restrictions whatsoever on the subdivision owners' use of the park: "[The New LLC does] not have a right to impose restrictions, reasonable or not, on use of that easement." Thus, without reaching the issue of whether the Restrictions unreasonably interfered with Murphy's easement rights, the trial court

---

[3] We review a trial court's construction of an easement provision *de novo*. Five Seas Invs., Inc v. Guzman, 258 So. 3d 569, 571 (Fla. 3d DCA 2018). When determining whether a restriction placed upon an easement by the servient owner violates an easement right, the court first looks to the language of the document creating the easement to see if the grantor reserved the right to impose such restrictions; if, as here, the easement document does not address this issue, then whether the restriction may be imposed depends on whether the restriction unreasonably interferes with the rights of the easement holder. Sandlake Residences, LLC v. Ogilvie, 951 So. 2d 117, 120 (Fla. 5th DCA 2007) (citation omitted).

concluded that the Restrictions violated the plat's use easement and declared that Murphy is not bound by the Restrictions.

While, by virtue of the plat's use easement, Murphy and the other owners in the subdivision enjoy a property interest in the park, their interest is distinct from ownership and does not confer title to the park. Dianne v. Wingate, 84 So. 3d 427, 429 (Fla. 1st DCA 2012). The New LLC, as the park's owner, continues to enjoy all rights to the park, except as limited by the easement, in any manner that does not *unreasonably interfere* with the subdivision property owners' lawful use of the easement. Id. Yet, the trial court's conclusion – that, as a matter of law, the New LLC is powerless to place any restrictions on the subdivision property owners' use of the park – effectively grants the subdivision property owners "absolute ownership of the easement property contrary to well-established property law." Id. at 431.

In Dianne, grantors of an access easement placed speed bumps on the easement access road along with concrete barriers on the road's shoulders, thus preventing easement holders from driving around the speed bumps. Id. at 428. The trial court entered a summary judgment for the easement holders, concluding that, as a matter of law, the easement grantors had unlawfully interfered with the easement. Id. at 429. The First District reversed the summary judgment, concluding that whether the

9

easement grantors' actions constituted unreasonable interference with the easement was a question of fact.  Id. at 431; see Sandlake Residences, LLC v. Ogilvie, 951 So. 2d 117, 121 (Fla. 5th DCA 2007); BHB Dev., Inc. v. Bonefish Yacht Club Homeowners Ass'n, 691 So. 2d 1174, 1176-77 (Fla. 3d DCA 1997) (concluding, based upon the parties' stipulation that no genuine factual issues existed, that the servient estate owner unreasonably interfered with an access easement because "the record contains evidence that the placement of a locked gate across the easement amounts to a substantial interference of the . . . easement holders' right to use the easement").

We view the easement's "reserved for the exclusive use" language as preventing the park's owner from allowing any party other than property owners in the subdivision to use the park; that is, the plat reserves use of the park exclusively to owners of property in the subdivision.[4] We do not view the plat's easement language as absolutely precluding the park owner from imposing any restrictions on subdivision property owners' use of the park. But, because the plat's easement language contains no express provision authorizing the park owner to impose the Restrictions on the use easement, the lower court must conduct the required reasonableness inquiry. Dianne,

---

[4] Murphy has made no allegation that the New LLC, via the Restrictions or otherwise, has violated the easement's "exclusive use" reservation by allowing non-owners to use the park.

10

84 So. 3d at 431. We therefore reverse that portion of the Final Judgment finding that the New LLC "does not have the right to impose restrictions, reasonable or not, on use of [the] easement," and remand for the trial court to conduct those proceedings it deems necessary to determine the fact issue of whether the Restrictions unreasonably interfere with Murphy's easement rights as granted in the plat.[5]

### B. Did the Individual Directors and the New LLC Usurp a Corporate Opportunity of the Old HOA by their Purchase of the Park from the Developer?[6]

The Final Judgment also concluded that the Individual Directors and the New LLC usurped a corporate opportunity of the Old HOA by purchasing the park from the developer. Consequently, the trial court fashioned a remedy that dispossessed the New LLC of the park upon a $15,000 payment (presumably by the New HOA) to the New LLC. We begin our analysis of this issue with a brief explanation of the doctrine of, and cause of action for, "usurpation of a corporate opportunity." The doctrine derives from fiduciary duties that directors and officers owe to their corporation. Farber v. Servan

---

[5] We express no opinion on the reasonableness of any of the Restrictions.

[6] We review the factual findings of a trial court after a bench trial for competent substantial evidence, while we review a trial court's legal conclusions *de novo*. Musi v. Credo, LLC, 273 So. 3d 93, 95-96 (Fla. 3d DCA 2019).

11

Land Co., 662 F.2d 371, 377 (5th Cir. 1981). Specifically, a director or officer breaches the fiduciary duty he or she owes to the corporation by exploiting, for his or her own profit, a beneficial opportunity that rightly belongs to the corporation. Id. To be entitled to relief under the usurpation of a corporate opportunity doctrine, a plaintiff must establish, by a preponderance of the evidence, three elements: (1) there was a business opportunity, (2) that the corporation is financially capable of undertaking, and (3) this opportunity fit into the present activities of the corporation or into an established corporate policy that acquisition of the opportunity would forward. Uvanile v. Denoff, 495 So. 2d 1177, 1179 (Fla. 4th DCA 1986) (citing Farber, 662 F.2d at 377).[7]

In its Final Judgment, the trial court examined each of these three elements and determined that Murphy established all three by a preponderance of the evidence. Clearly, the trial court's findings that

---

[7] Because the Individual Directors and the New LLC did not assert below or in this Court that the usurpation of corporate opportunity doctrine is inapplicable to directors and officers of a not-for-profit corporation such as the Old HOA, we need not, and do not, decide this more difficult threshold question. We do note that, at oral argument, Murphy's counsel commendably conceded that he was unable to find any reported cases where the doctrine has been applied to divest not-for-profit corporation directors or officers of an opportunity allegedly usurped by them. Similarly, our research uncovered no such cases.

elements (1) and (3), described above, are supported by competent substantial evidence. Indeed, it is undisputed that the Old HOA had an opportunity to buy the park, and acquisition of the park plainly fit into the activities of the Old HOA, a voluntary homeowners' association for the members of the subdivision.

We are concerned, however, with the trial court's analysis of, and factual findings regarding, the second element: the Old HOA's financial ability to exploit the opportunity. Regarding this second element, the trial court made the following factual finding:

> The preponderance of the evidence shows that the [Old HOA] was financially capable of pursuing this business opportunity. Pursuant to the [Old HOA]'s Articles of Incorporation, the owners of property in the Subdivision were members of the [Old HOA]. Under Plaintiff Murphy's leadership, the [Old HOA]'s members raised more than enough money to purchase the Subject Property. Accordingly, the [Old HOA] was financially capable of pursuing this business opportunity. Thus, prong two is satisfied.

The trial court's second-prong inquiry focused not on the financial ability of the Old HOA to exploit the presented opportunity, but, rather, on Murphy's success in raising funds from subdivision property owners long after the opportunity had been presented to the Old HOA. In our view, the trial court should have centered its second-prong analysis around the Old HOA's financial ability to purchase the park, focusing on the time period when the developer offered to sell the park to the Old HOA, i.e., when the

13

corporate opportunity arose. While Murphy was certainly able to raise $26,000 well *after* the New LLC had purchased the property and imposed the Restrictions on park access, there is no evidence in the record that, at any time, the Old HOA was financially capable of purchasing the property from the developer. Indeed, precisely because of its unfavorable financial condition and its previous, unsuccessful efforts to raise funds, the Old HOA tried, albeit unsuccessfully, to persuade the developer to convey the park to the Old HOA for free. When these efforts failed, and the developer refused to donate the park to the Old HOA, the Individual Directors created (and funded) the New LLC, so that the park could be bought at the negotiated $15,000 purchase price and maintained through user fees.[8]

---

[8] As noted previously, in its Final Judgment the trial court characterizes these "actions" by the Individual Directors as "well meaning" and similarly characterizes the Individual Directors as having undertaken these actions with "good intentions." We find it difficult to reconcile these express findings – which are amply supported by the record and not challenged by Murphy – with the trial court's conclusion that the Individual Directors usurped a corporate opportunity of the Old HOA. Indeed, by definition, a director or officer who usurps a corporate opportunity breaches a fiduciary duty owed to, and commits an intentional tort against, the corporation. Halkey-Roberts Corp. v. Mackal, 641 So. 2d 445, 447 (Fla. 2d DCA 1994). As a practical matter (which, because of our limited holding, we neither decide nor address further), we are unsure whether a director or officer, through well-meaning actions that are undertaken with good intentions, can breach a fiduciary duty owed to, and thus commit an intentional tort against, a victim corporation.

14

We recognize that some usurpation of corporate opportunity cases appear to de-emphasize the second prong. See Cohen v. Hattaway, 595 So. 2d 105, 108 (Fla. 5th DCA 1992) ("[I]n order to show a corporate opportunity, a pleader must allege (1) the existence of a business opportunity, (2) which fits into the present activities of the corporation or into an established corporate policy which acquisition of the opportunity would forward."); accord Pan Am. Trading & Trapping, Inc. v. Crown Paint, Inc., 99 So. 2d 705, 706 (Fla. 1957) (holding that an officer of a corporation who purchased land in his own name, rather than in the name of the corporation that had "a valid and significant corporate purpose" in purchasing the land to expand its operations, usurped a corporate opportunity). These cases, however, do not specifically analyze the issue of the corporation's present ability to undertake the corporate opportunity at the time the opportunity is presented. Nor, as mentioned in footnote 7, *supra*, do these cases involve directors and officers of not-for-profit corporations with no obvious mechanism for successfully raising the funds necessary to undertake the opportunity at the time it is presented. The issue is especially acute with the type of entity involved in this case – a voluntary homeowners' association with no membership list, no required membership fees, and no ability to levy assessments on homeowners.

15

Finally, we understand Murphy's argument that, in analyzing the doctrine's second prong, we should focus on Murphy's fundraising efforts: namely, because Murphy was successful in his after-the-fact fundraising efforts, we should presume that, had the Individual Directors tried, they could have raised the money back when the opportunity arose. Nevertheless, we are uncomfortable with the unintended byproduct of such a misdirected focus: imposing on directors or officers of not-for-profit companies, by judicial fiat, what amounts to a "fiduciary duty to fundraise."

Hence, our holding is as practical as it is narrow and specific: assuming the usurpation of corporate opportunity doctrine applies to directors and officers of a not-for-profit voluntary homeowners' association created under chapter 617 of the Florida Statutes, for the trial court to impose its equitable powers to divest a corporate opportunity usurped from a defendant, the not-for-profit voluntary homeowners' association from which the opportunity was usurped must have had the financial ability to undertake the corporate opportunity when the opportunity arose.

Because the record shows that the Old HOA never had the financial ability to purchase the park from the developer, Murphy, derivatively on behalf of the Old HOA, failed to establish an essential element of the asserted action for usurpation of a corporate opportunity of the Old

16

HOA. We, therefore, reverse that portion of the Final Judgment and remand for entry of a judgment for the Individual Directors and the New LLC on this claim.

## III.  Conclusion

We reverse that portion of the trial court's Final Judgment declaring that, as a matter of law, the New LLC may not impose restrictions, whether reasonable or not, on the easement rights granted to Murphy in the plat. We remand for the trial court to conduct the required reasonableness inquiry regarding the Restrictions. We also reverse that portion of the Final Judgment that determined the Individual Defendants and the New LLC had usurped a corporate opportunity of the Old HOA and remand for entry of a judgment for the Individual Defendants and the New LLC on this claim.

Reversed and remanded with instructions.